**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  18-cv-00763-MSK-NRN

ROBYN BRAGG,

      Plaintiff,

vs.

SOUTHWEST HEALTH SYSTEM, INC. d/b/a
SOUTHWEST MEMORIAL PRIMARY CARE,

      Defendant.

_____

**PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**
_____

**<u>Certificate of Conferring</u>**

      Plaintiff's Counsel conferred with Defendant's counsel on the subject of this Motion; it is opposed.

      1.  On April 22, 2020, Bragg's counsel notified SHS counsel concerning the Plaintiff's Motion for Spoliation Sanctions.

      2.  SHS opposed the proposed filing claiming the motion was baseless, frivolous and untimely, and informed Plaintiff's counsel the Defendant would seek costs and fees.

**I.     RELEVANT FACTS**

    **A.  <u>Bragg's FCA Whistleblower Retaliation Claim</u>**

      Plaintiff Robyn Bragg (Bragg) claims she was fired by Defendant (SHS) after she took efforts to stop one or more violations of the False Claims Act, by putting SHS Senior Leaders on

notice that she reasonably believed SHS knowingly submitted false records to the government for payment. (#97, pp. 15-33).[1] Bragg and her staff used the words "fraud," "fraudulent" and "falsification" when taking efforts to stop the false billing practices. (#97, pp. 19-32). SHS claims it fired Bragg for legitimate reasons because three accusations were made about her. (#88, pp. 20-21). Bragg contends all three lacked merit and were pretextual. (#97, pp. 34-42).

Bragg was fired on 8/17/17. (#88, p. 2, fn 2). On 9/1/17, when Bragg's former supervisor, Angela Kobel, learned Bragg obtained documents from an SHS employee, Kobel believed they were proof of Bragg's complaints that nurses who inserted IV start/stop times on patient charts not administered by that nurse were false records. (#128-5). On 9/25/17, Bragg's counsel served SHS's legal counsel with an extensive Litigation Hold letter. (#56-1). Since then, SHS has engaged in a game of hide and seek.[2]

**B.   SHS Failed to Timely Preserve ESI**

No later than 9/25/17, SHS was on notice to preserve all data relevant to Bragg's anticipated litigation, but it failed to do so. (Ex. 1 to this Motion).

-The hold on Bragg's devices were not implemented until 10/3/17 or 10/4/17. (Krupa Dep. 45:10-22, #128-7).

- Bragg's email account was not preserved until 10/9/17. (Krupa Dep. 54:12-55:6, #128-7).

-Bragg's former desktop computer was stored between 10/3/17 and April 2018 on some racks in a storage space where multiple IT personnel had access. (Parker Dep. 31:8 – 33:25, #128-

---

[1] Many prior briefs with exhibits have included similar content and are referred to by their CM/ECF#. Her Response to Exclude her Expert Penrod #128 is partially cut and pasted into this Motion.
[2] See Ex. 1 to this Motion, a chronology of Bragg's spoliation concerns, SHS's responses, and Court Orders.

8). Yet, between 10/3/2017 and 11/18/2017 activity logs for the device show over 100 user activities taking place while the desktop was allegedly in storage. (#125-3).

-Angela Kobel testified she accessed Bragg's computer after Bragg departed (**#**125-18**)**. Bragg's devices were stored via a SHS IT manual ticketing system but SHS doesn't know how Kobel accessed Bragg's computer. (Krupa Dep. 81:3-82:25; 86:12-88:7, #128- 7).

-Contrary to the activity logs indicating multiple users accessing Bragg's desktop computer between the Litigation Hold and 11/14/2017, SHS claims it used Bragg's devices to search for records responsive to Bragg's unemployment subpoena (Ex. 2; Krupa Dep. pp. 31:5-35:25, #128-7; SHS Motion #124 p. 6, fn 4). However, the subpoenas were not served on SHS until 11/14/17) (Ex. 3), well after the October 2017 user activities.

-The litigation hold was not implemented for all SHS custodians until 9/26/18, a year after service of the Litigation Hold letter. (Krupa Dep. 55:7-56:15, #128-7).

-SHS presumed SHS staff subject to the Litigation Hold properly secured relevant data. (Krupa Dep. 15:24-16:12, #128-7).

-No one in SHS IT verified whether any custodians deleted relevant data. (Krupa Dep.16:13-18:7, #128-7).

-SHS staff subject to the Litigation Hold had the ability to delete anything from their SHS issued computer and from "Trash." There was no effort to prevent double deletion. (Krupa Dep. 49:11-24; 51:12-52:11; 52:24-54:9, #128-7).

-Any of the SHS custodians could have deleted emails between September 2017 [Litigation Hold] and September of 2018 [Litigation Hold implemented for everyone besides Bragg.] (Krupa Dep. 58:3 – 60:21, #128-7).

-SHS didn't have email exchange archive backups until February 2018, so, anyone could have deleted emails between July 2017 and February 2018. (Krupa Dep. 60:22-61:14; 93:11-18, #128-7).

-SHS had no IT Governance protocols until February 2019. (Krupa Dep.75:4-77:9, #128-7).

-SHS did not search its archives to determine if any emails had been deleted. (Krupa Dep. 70:7-71:25, #128-7).

**C**. **SHS Engaged in Data Destruction and Significant Alteration of ESI**

Bragg testified she placed documents in folder named "Angela" that she created on her desktop interface (icon on opening computer screen), and the documents found on the C: drive in a folder named Angela on her desktop computer were substituted documents. (Bragg's Brackin 702 Motion, #125 p. 2; #125-2). The logs her expert, Mr. Penrod, reviewed indicate the baltes.csv documents Mr. Brackin found on the C: drive were ***created*** by someone using the *rbragg* user name on 11/17/17, after she left SHS, later produced to Bragg as contents within the Angela folder. (Resp. to Bragg IR #2, Ex. 4).[3] (See #125 pp. 11-12; #125-2; #125-3 p. 1, Row 22 and #125-12, p. 5, Row 755). Mr. Penrod found no Angela folder on Bragg's computer interface. (#90-2, p. 5).

Mr. Penrod's comprehensive spoliation investigation revealed extensive evidence that relevant data was destroyed and significantly altered after Bragg was fired. (Penrod Rept. #90-2, pp. 2-7 and Exs. C and D thereto, #125-3 to #125-16). Specifically:

---

[3] Dep. Ex. 20, the majority of documents SHS identified as the contents of the Angela folder, contain baltes.cvs spreadsheets. SHS #1382 and #1383 contain 180 pages of data intensive spreadsheets.

-Approximately 8,456 files were created on Braggs devices between 10/5/2017 and 11/8/2017. (#125-13 through 125-16).

- Approximately 996 of those 8,456 files were deleted between 10/5/2017 and 11/8/2017. (#125-13 through #125-16).

- Of the 996 deleted, someone using the *rbragg* userame deleted 7 items on 11/17/2017, (#125-12, Lines 31, 32, and 34-37, 311).

-Of the 996 deleted, someone using the *cdennis* name deleted 141 items on 11/17/17. (#125-12, see deleted items between Lines 2225-2476).

- Of the 996 deleted, someone using the *balexander* name deleted 24 files on 11/17/17. (#125-12, see deleted items between Lines 2225-2476).

-Word documents—user created files—were in the Windows Recycle Bin. (#125-16, Ln 39185-39195).

-Text files—user created files—in Bragg's folders were deleted. (#125 p. 7-8 and Ex. #125-16, p. 49, Rows 41171-41179).

-Numerous files, without file extensions, created prior to Bragg's departure, were deleted on 11/17/17. (#125-13 through #125-16).

-Log event sequential identification numbers and timestamps in some places are in reverse order. (#125 at p. 12; #125-9, p. 1). For example, a System Boot occurred at 8:01 A.M. on 10/5/2017, listed in the log as Event ID 699 (#125-9, p. 2, Row 42). Event ID 707, a System Shutdown, took place on 10/4/2017 at 4:25 p.m. (#125-9, p. 2, Row 43). It makes no sense that event 707 happened before event 699, particularly during this critical time when the litigation hold was said to have been implemented.

-SHS used Bragg's former computer and engaged in activities that could mask deletions without any trace. (#90-2, pp. 2-7; #128, ¶12-15).

-Several events indicate activity in the middle of the night, outside of normal work hours. For example, approximately 810 files, including documents and text files, were created between midnight and 5:27 A.M. on 11/18/2017. (#125-12, Rows 2-811).

- SHS unilaterally excluded *temporary internet files* from what it defined as "meaningful files." However, *deleted temporary internet* files can be recovered from unallocated space and provide valuable evidence. [4] Mr. Penrod identified his concern regarding unallocated space. (Penrod Decl. #128-4, ¶¶ 9-13). Moreover, Bragg expressly identified *temporary internet files* to be preserved in the 9/25/17 Litigation Hold served on SHS. (#56-1).

SHS attempts to categorize *"temporary internet files"* as "non-relevant" by excluding those files it deemed "meaningful" contrary to Bragg's express directive to preserve those files. More specifically, SHS's expert states:

> Files that were Accessed, Modified, and Deleted but were NOT in the /Users/rbragg folder structure returned 17,137 deleted files. These files were reviewed and found to consist of primarily temporary Internet files and did not contain user created files like word processing files, spreadsheets, or email. **#90-1, p. 4.**

Thus, SHS's expert acknowledged 17,137 files were deleted, which were primarily *temporary internet files*, which Bragg unequivocally directed SHS to preserve. (#56-1)

While SHS contends the loss of *temporary internet files* as speculative, the purpose of requesting the preservation of these type of files is relevant. Windows stores temporary copies of web pages when someone uses a browser while exploring the Internet. A forensic examination of a computer can reveal the

---

[4] See Investigating by Computer, 2nd Edition, Association of Certified Fraud Examiners, p. 20 of 20 pdf, (p.163) available at https://www.acfe.com/uploadedFiles/Shared_Content/Products/Self-Study_CPE/Investigating%20by%20Computer%202017_Excerpt.pdf

Internet websites visited by a user, and reconstruct copies of the actual web pages that were viewed. A forensic expert can determine what search terms were used to search the Internet. If an individual searched the Internet to find wiping software to use for the purpose of cleaning a hard drive, a computer forensic expert can detect what websites were visited, whether wiping software was purchased, installed, and used, and how much data was wiped from the hard drive. See A*dvantaCare Health Partners, L.P. v. Access IV*, 2004 WL 1837997, at *1-2 (N.D. Cal. Aug. 17, 2004) (computer expert determined when the ex-employee visited websites and what websites were visited, what wiping software he installed, and when he used the wiping software to delete data from his computer). Accordingly, *temporary internet files* were relevant and meaningful, yet they were deleted.

### D. <u>SHS Repeatedly Failed to Comply With Discovery Orders</u>

On 3/12/19 this Court granted Bragg the right to obtain a copy of the "complete log/in and log out" logs of her devices "from July 23, 2017 to the present," at her cost that SHS's expert would create. (#49). However, SHS defied that order by producing a log that provided information for only two days, 11/17/17 and 11/18/17. (#62-1, 62-2, Ex. A attached thereto). Bragg claimed the log was unresponsive by only providing two days of data, (#63-1, 63-2 and Ex. A- attached). SHS represented to the Court "the computer doesn't store all activity" and "activity was not deleted; it's just not available" without responding to Bragg's request for an explanation why not. (#49-1, p. 2; #63-2, Ex. G. p.5; #63-1).

At a 7/29/19 hearing, based on SHS's representation that the "information doesn't exist" or was provided by the two-day log on which Cyposis relied, the Court denied Bragg's request for further logs (#63). Yet, it ordered that SHS produce a witness to appear at a 30(b)(6) deposition to explain why SHS accessed Bragg's former devices using her identity, and using identified privileges and applications. (#64; 7/29/19 Hrg. Trans. #128-1, pp. 25-21-28:5).

At the 30(b)(6), SHS produced neither *cdennis* or *balexander,* the two SHS IT staff who accessed Bragg's devices using the *rbragg* username on 11/17/17 and 11/18/17 despite SHS's counsel's representation Mr. Alexander could testify. (#128-1, pp. 25:17 -27:24). Instead, Mr. Krupa testified, who was unprepared to respond to portions of the 30(b)(6) Notice. (#128-7, 31:5-35:25; 39:22-43:18). Accordingly, Bragg sought to continue the 30(b)(6) deposition, which the Court denied, but ordered Mr. Krupa to answer the questions in writing, with specificity, under oath, to bind SHS. (#128-9, pp. 12:24-17:4). On 10/4/19, nearly two years after Bragg subpoenaed the Anglea folder, Mr. Krupa filed a Declaration that failed to fully explain how and why SHS personnel accessed Bragg's devices (#128-10), in defiance of the Court's 9/27/19 Order. *Id*.

## II. LAW AND ARGUMENT

### A.  <u>Sanctions are Appropriate When Spoliation Occurs</u>

Spoliation results from the destruction *or* significant alteration of relevant evidence, *or* failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." ***Cache La Poudre, Feeds, LLC v. Land O'Lakes, Inc***., 244 F.R.D. 614, 620 (D. Colo. 2007) (Emphasis added) (citing ***Zubulake v. UBS Warburg, LLC***, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (***Zubulake IV***) both of which were cited in Bragg's Litigation Hold letter (#56-1, fn. 1). "Destruction of evidence, or spoliation, is a discovery offense." ***Gates Rubber Co. v. Bando Chem. Indus. Ltd***., 167 F.R.D. 90, 101 (D. Colo. 1996). As part of their discovery obligations, "putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation." ***Cache La Poudre***, 244 F.R.D. at 620. A court may impose sanctions for the destruction or loss of evidence. ***Id.*** "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because [they] knew, or should have known, that litigation was imminent, and

(2) the adverse party was prejudiced by the destruction of the evidence." ***Burlington N. & Santa Fe Ry. Co. v. Grant***, 505 F.3d 1013, 1032 (10th Cir. 2007). The duty to preserve arises when a party knew or should have known of evidence may be relevant to potential future litigation. ***Zbylski v. Douglas Cty. Sch. Dist.***, 154 F.Supp.3d 1146, 1164 (D. Colo. 2015). The two most important factors in determining spoliation sanctions are culpability of the offending party and actual prejudice to the other party. ***Id.***

### B.  SHS's Duty to Preserve Arose in September 2017

"In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary." ***Id.***, 154 F.Supp.3d at 1163. Arguably, SHS was on notice on 9/1/17 that Bragg intended to file future litigation when Ms. Kobel assumed documents Bragg obtained from a former co-worker were proof of non-administering nurses inserting IV stop times—part of Bragg's claim of "false records." (#128-5). It is indisputable SHS knew of future litigation once Bragg's Litigation Hold was served on its legal counsel on 9/25/17, specifically referencing ***Zubulake IV*** obligations. (#56-1); ***Zbylski,*** 154 F.Supp.3d at 1164.

***Zubulake IV*** further held archived data was subject to the hold; legal counsel must oversee preservation compliance; and failure to preserve resulted in some documents being unable to be recovered, which was found to be willful spoliation. 220 F.R.D at 436-440. A duty to preserve means action must be taken . . . that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that is available to be produced to the other side. ***Zubulake v. UBS Warburg, Inc***., 229 F.R.D. 422, 436 (S.D.N.Y. 2004) (***Zubulake V***).

SHS's failure to preserve ESI on multiple levels for up to a year after the Litigation Hold, despite long held legal authority expressly cited in the Litigation Hold letter, clearly indicates spoliation occurred. Taken together, these facts establish that preservation was inadequate; accordingly, spoliation occurred.  *Cache La Poudre* at 620; *McCargo v Texas Roadhouse, Inc.*, 2011 WL 1638992, *3-5 (D. Colo. 2011) (Defendant found willfully culpable for failure to preserve; it appears to be a calculated position that if it does not have the evidence to produce, and thus fails to allow Plaintiff access to the evidence, it cannot be hurt in litigation).

### C.  Bragg Was Prejudiced by SHS's Failure to Preserve

With regard to prejudice, "[t]he burden is on the aggrieved party to establish a *reasonable possibility,* based on concrete evidence rather than a fertile imagination that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber.,* 167 F.R.D. at 104. (citing cases). *Gates* quoted *Wigmore on Evidence* to explain the burden upon the aggrieved party:

> [T]he rule might correctly be stated as follows: The failure or refusal to produce a relevant document, or the destruction of it, is evidence from which alone its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces *some evidence tending to show that the document actually destroyed* or withheld is the one as to whose contents it is desired to draw an inference. In applying this rule, care should be taken *not to require anything like specific details of contents,* but merely such evidence as goes to general marks of identity.

*Gates,* 167 F.R.D. at 104 (quoting 2 *Wigmore on Evidence* § 291 at 228. (emphasis added).

Bragg is prejudiced by her inability to review and eventually present to the Court deleted, changed, and altered evidence that could corroborate her claims that she repeatedly took efforts to stop what she reasonably believed were false records submitted to Medicare and Medicaid for

payment.  Bragg was prejudiced by her inability to review the content of her prior laptop and desktop in the same condition as when the Litigation Hold should have been implemented.

This case is similar to ***McCargo*** where "there is no way to know exactly what evidence was destroyed" which obviously prejudices a party who then does not have all evidence to prove her case, yet it can be reasonably inferred the evidence was favorable to her. ***McCargo v Texas Roadhouse, Inc.,*** 2011 WL 1638992, *11 (D. Colo. 2011). SHS used application tools and privileges while allegedly searching for responsive documents for Bragg's unemployment benefit hearing were never fully explained despite Court Orders to do so. (7/29/19 Disc. Dispute Hrg. Trans. #128-1, pp. 25:21-29:1, Krupa Dep. #128-7, pp. 31:5-35:25; 39:22-43:18 9/27/19 Disc. Dispute Hrg. Trans. #128-9, pp. 12:24-17:12 and Krupa Declar. #128-10).

Based on SHS's numerous failures to preserve, and particularly regarding the creation of an Angela folder from a USB upload using the *rbragg* user name after she left SHS, constitutes "some evidence" tending to show SHS deleted and altered significant evidence. Bragg testified the contents of the Angela folder created after she left SHS was not the contents she placed in it. (#125-2). Bragg was prejudiced by the loss of the contents of the folder which may have established her false records claim.

Mr. Penrod explained that "booting and shutting down a computer changes the content and properties of Windows operating system files as well as startup, suspend mode, virtual memory, and system backup files" as well as "event logs, Windows Registry hives, and latent ESI in unallocated space." (Penrod Decl. #128-4, ¶ ¶ 9-13). By writing over unallocated space, data is lost. While it may not be definitive WHAT was lost, what is certain is THAT data was lost.

### D. SHS's Failure to Preserve ESI and Destruction/Alteration Was Intentional

Fed. R. Civ. P. 37 (e) provides:

e) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

   (1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

   (2)  only upon finding that the party acted with the **intent to deprive** another party of the information's use in the litigation may:

      (A)  **presume** that the lost information was **unfavorable** to the party;

      (B)  instruct the jury that it may or must presume the information was unfavorable to the party; [inapplicable here] or

      (C)  **dismiss the action** or enter a default judgment.

      (Emphasis added)

A failure to preserve evidence may be negligent, grossly negligent, or willful, but the intentional destruction of relevant records—either paper or electronic—is clearly willful conduct. *Philips Electronics N. America Corp. v. BC Technical,* No. 2:08-cv-639 CW-SA, 2011 WL 677462, at *48 (D. Utah Feb. 16, 2011) (citing *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 685 F.Supp.2d 456, 463 (S.D.N.Y. 2010). After the duty to preserve attaches, the failure to collect either paper or electronic records from key players, the destruction of email, or the destruction of backup tapes is grossly negligent or willful behavior. *Id.* (citing *Pension Comm.,* 685 F.Supp.2d at 455). "Bad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control.'" *Id.* (quoting *Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.,* 621 F.Supp.2d 1173, 1193 (D. Utah 2009).

Mr. Penrod identified five USB devices used to access Bragg's former devices after she left SHS that were critical evidence of what transpired on those devices while in SHS's custody. (Penrod Decl. #90-2, pp. 5 & 7; #128-4, ¶14). But SHS neither disclosed nor produced any USB

devices to Bragg. Because the data was withheld from Bragg, it is impossible to know what was done with her former devices. *McCargo*, 2011 WL 1638992, *11.

As is commonly known, computer files may be manipulated to hide their true contents. *United States v. Hill*, 459 F.3d 966, 978 (9th Cir.2006) ("Images can be hidden in all manner of files, even word processing documents and spreadsheets. Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.").

The facts taken together, as set forth in this section, where data was deleted, altered, and manipulated in several ways after Bragg's departure and with notice of future litigation, should be viewed as intentional or willful. *Zbylski*., 154 F. Supp.3d at 1159. Intentional or willful destruction by itself is sufficient to demonstrate relevance. *Zubulake V,* 229 F.R.D. at 430.

### E.  SHS Should be Severely Sanctioned for Intentional or Willful Spoliation

The cumulative facts regarding changed, deleted, and altered evidence in this case, as well as the failure to preserve, indicate that the conduct was intentional and willful. Accordingly, severe sanctions should be imposed against SHS. As the *McCargo* court held:

> [S]poliation sanctions serve a dual function. Not only are they meant to penalize litigants, but they also serve to deter those who might be tempted to cause the spoliation of evidence. Lesser sanctions would not establish deterrence some litigants need regarding this behavior.... One who anticipates that compliance with discovery rules, and the resulting production of damning evidence, will produce an adverse judgment will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment he... is tempted to thus evade. In other words, courts have recognized that if parties are willing to take the risk and balance destroying evidence against turning over the proverbial smoking gun, knowing that the destruction will not result in the ultimate judgment, destruction of important evidence will occur. The court must not inherently reward the misbehavior of companies and individuals who want to destroy incriminating evidence rather than produce it and have a judgment entered against them; litigants must be strongly discouraged, rather than encouraged in any way, to become more and more clever about how to delete and hide the

destruction of electronic documents. *McCargo,* 2011 WL 1638992, *17 citing *Philips Electronics*, 2011 WL 677462, at *58.

This case is similar to *Organik Kimya, San. Ve Tic. A.S. v. ITC*, 122 U.S.P.Q. 1281, 848 F.3d 994 (Fed. Cir. 2017), where the Court found a dismissal of the case for spoliation on an extreme level was not an abuse of discretion. Some of the spoliation facts there were more severe than here, yet others were similar: Overwriting data from a hard drive; backdating the computer's internal clock; evidence of covering up its activities and, uncovering undisclosed and unproduced USB storage devices. There, the initial ALJ's Order stated in part:

> [T]his is an extreme case, for Organik Kimya flouted its obligation to preserve evidence, deliberately destroyed evidence, and then actively attempted to deceive the undersigned as to what it had done. Given: (1) the grave damage Organik Kimya's deliberate conduct potentially could have on the administration of justice; (2) the need to deter such egregious conduct in the future; and (3) the certain prejudice to Dow, only the strongest remedy available is sufficient. *Organik Kimya,* 848 F.3d at 1000.

The ITC affirmed the ALJ's ruling. *Id.* The Federal Circuit also affirmed imposition of the most severe sanction noting Rule 37 authorizes dismissal:

> When the facts show willfulness and bad faith, as in this case, the district court need not investigate the propriety of a less extreme sanction. In such cases, the 'selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court.'" *Id.* at 1002 (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992).

> Although the entry of a default judgment for failure to comply with a discovery sanction may seem harsh, the Supreme Court has explained that the most severe sanctions must be available to district courts in appropriate cases:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court. But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those

whose conduct may be deemed to warrant such a sanction, but to deter those who might
be tempted to such conduct in the absence of such a deterrent. *Id* at 1002-03 citing ***Nat'l
Hockey League v. Metro. Hockey Club, Inc*.**, 427 U.S. 639, 642-43, 96 S.Ct. 2778, 49
L.Ed.2d 747 (1976).

Here, as in ***Organik,*** SHS not only failed to preserve ESI in violation of federal rules, and

destroyed and altered documents, it also failed to abide by this Court's discovery orders. Bragg

requests, per Fed. R. Civ. P. 37(e)(2)(c) and Fed. R. Civ. P. 37(b)(2)(A)(v), imposition of the most

serious sanction against SHS—dismissal of its defense—due to its multiple levels of willful

failures to preserve, intentional destruction of evidence, and intentional alteration of data on

Bragg's devices. At a minimum, the Court should presume the spoliated data was favorable to

Bragg. Bragg further requests pursuant to Fed. R. Civ. P. 37(b)(2)(C) that SHS be ordered to pay

all of her reasonable attorney fees' and costs incurred in discovering the spoliation. Bragg

contends spoliation was at issue when she submitted her Responses to Interrogatory #8, 10, and 11

to SHS on 12/21/18 (#74-2), and certainly no later than 1/24/19 when she served her Interrogatory

No. 17 seeking the complete logs for Bragg's computer (#49-1).

## III.  CONCLUSION

Congress expanded the FCA's whistle blower retaliation provisions to protect employees

who attempt to stop what they believe are false claims for governmental funds. It would be a

manifest injustice to allow SHS to continue its defense in this case in light of its willful failure to

preserve evidence and its intentional manipulation of evidence. Such willful and intentional

destruction demonstrates its relevance to Bragg's case.

Spoliation is relevant to Bragg's claim of SHS's pretextual reason to fire her. Spoliation

occurred based on Mr. Penrod's analysis in reliance on extensive data. Moreover, the five USB

devices SHS used while allegedly searching for documents responsive to the Bragg

unemployment hearing subpoena were never disclosed in this case, after notice of Bragg's anticipated litigation. Accordingly, Bragg and Mr. Penrod were prevented from assessing critical evidence to prove her case. That said, Mr. Penrod did prove within a reasonable degree of scientific certainty that SHS deleted, altered and created data. (#90-2 and #128-4).

SHS's defense should be dismissed due to its intentional and willful conduct which defied Court Orders. At a minimum the Court should presume the deleted and altered data favored Bragg. In either case Bragg should be awarded her reasonable attorneys' fees and costs due to SHS ongoing game of hide and seek. SHS's conduct prejudiced Bragg's ability to prove her case by tampering with evidence; she further suffered excessive expense by SHS's delay tactics and its lack of candor to the Court.

Respectfully submitted April 22, 2020.

<div style="margin-left:40%">

Sholler Edwards, LLC.

*s/Lynne Sholler*
1099 Main Avenue, #409
Durango, CO 81301
855-649-5884
Lynne@ShollerEdwards.com

</div>

## CERTIFICATE OF SERVICE

 I certify that on April 22, 2020, I electronically filed this **Motion for Spoliation Sanctions** with the Clerk of Court using the CM/ECF systems which will send notification of the filing to:

janet.savage@dgslaw.com
claire.mueller@dgslaw.com
Jackie.roeder@dgslaw.com
Lana.rupprecht@dgslaw.com

*Attorneys for Defendant*

<div style="margin-left:40%">

*s/Anthony Edwards*

</div>