IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-00763-MSK-NRN

ROBYN BRAGG,

     Plaintiff,

v.

SOUTHWEST HEALTH SYSTEM, INC. d/b/a
SOUTHWEST MEMORIAL PRIMARY CARE,

     Defendant.

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR SPOLIATION SANCTIONS

---

Defendant Southwest Health System, Inc. d/b/a Southwest Memorial Primary Care ("Southwest"), responds to Plaintiff's Motion for Spoliation Sanctions (CM/ECF #133) ("Motion for Sanctions" or "Motion") as follows:

### SUMMARY OF ARGUMENT

Plaintiff's Motion for Sanctions is a patchwork of innuendo and false assumptions pieced together to distort the facts, the expert conclusions, and the record evidence in this lawsuit. As early as the initial filing of the Complaint two years ago, and before conducting any discovery, Plaintiff has alleged spoliation in this case. *See* Complaint ¶¶ 23-24, 58, ECM/CF # 1. Yet, only now, nearly nine months after Southwest produced a forensic image of Plaintiff's computer to Plaintiff's expert on August 13, 2019, seven months after the close of discovery on September 30, 2019, and six months after the production of Plaintiff's computer forensic expert report on October 30, 2019, has Plaintiff filed the present Motion. Indeed, Plaintiff has unreasonably

1

delayed the filing of this Motion, and Plaintiff's lack of diligence alone serves as grounds for dismissal.

Even absent its untimeliness, Plaintiff's Motion is groundless and contains no basis in fact or law. First, Plaintiff alleges Southwest destroyed emails, spreadsheets, and/or Word processing documents saved in an electronic folder entitled "Angela" on the desktop of her work-issued desktop and laptop computers. However, Plaintiff testified during her deposition that these documents are duplicate copies of emails Plaintiff either sent directly to, or copied, Angela Kobel. R. Bragg Deposition, p. 291:10-12. Plaintiff testified that there were approximately 40-80 of these emails in the folder. *Id*. at 297:23-24. Plaintiff also testified that she did not delete emails when she put them in the Angela folder so they should still be in her email. *Id*. at 390:11-14. Therefore, the basis of Plaintiff's Motion is essentially that Plaintiff thought there were more emails in this folder, although she does not know how many more emails there should be. Of course, emails are sent to multiple recipients and tend to reside in multiple places. Ultimately, Southwest found 66 Angela emails and produced them to Plaintiff.[1]

---

[1] Many of these documents contain protected health information ("PHI"); therefore, Southwest is referring to them by Bates number to protect patient confidentiality. *See* SHS_00000441-SHS_00000615, SHS_00000809-SHS_00000810, SHS_00000811-SHS_00000814, SHS_00000815-SHS_00000816, SHS_00000819, SHS_00000820-SHS_00000994, SHS_00001000-SHS_00001001, SHS_00001023, SHS_00001044-SHS_00001048, SHS_00001049, SHS_00001051, SHS_00001052-SHS_00001053, SHS_00001054-SHS_00001057, SHS_00001233- SHS_00001235, SHS_00001240, SHS_00001245-SHS_00001246, SHS_00001268-SHS_00001346, SHS_00001449, SHS_00001940-SHS_00001942, SHS_00002326-SHS_00002329, SHS_00002442-SHS_00002445, SHS_00002450-SHS_00002452, SHS_00002453-SHS_00002521, SHS_00002522-SHS_00002524, SHS_00002530, SHS_00010827-SHS_00010828, SHS_00010829-SHS_00010830, SHS_00010852-SHS_00010856, SHS_00010856-SHS_00010857, SHS_00010858-SHS_00010860, SHS_00010910-SHS_00010912, SHS_00010914-SHS_00010915, SHS_00010918-SHS_00010919, SHS_00011230-SHS_00011243, SHS_00017929-SHS_00017930, SHS_00017931-SHS_00017932, SHS_00017933, SHS_00017934-SHS_00017935, SHS_00017936, SHS_00017937, SHS_00017938, SHS_00017939-SHS_00017943, SHS_00017944, SHS_00017945-SHS_00017949, SHS_00017950-SHS_00017954, SHS_00017955-SHS_00017956, SHS_00019040-SHS_00019041, SHS_00019370-SHS_00019371, SHS_00019440, SHS_00019576-SHS_00019578,

Based on Plaintiff's testimony, these emails are within the numerical range she identified.  In sum, it appears that Plaintiff's spoliation allegations are based on nothing more than her unsupported and unsubstantiated claim that there may have been more emails, even though Plaintiff's own testimony demonstrates that Southwest produced a number of emails within her estimated range.

The basis for Plaintiff's Motion is the alleged spoliation of these emails, which – to the extent they existed – were already produced during discovery multiple times, either as produced emails or on the forensic image of Plaintiff's computer sent to Plaintiff's expert.  Plaintiff apparently has not taken the time to review the emails that Southwest produced.  For this reason, this Motion clearly serves only to drive delay, vexation, and expense.  The Motion is frivolous and should be denied.

Moreover, Plaintiff's expert, David Penrod, does not conclude that any of these contested documents in the Angela folder were missing on the forensic computer image.  Instead, his analysis found that Plaintiff's computer was turned on and off, and that temporary system files were deleted from the computer.  Merely turning a computer on and off does not amount to spoliation, and, as explained below, these temporary system files are irrelevant to this lawsuit.  *See* Declaration of Frank Brackin, CM/ECF, #127-01, ¶¶ 4-5 and supporting Exhibits A and B attached thereto.  Relying on the conclusions of her expert, Plaintiff speculates that relevant files

---

SHS_00020483-SHS_00020484, SHS_00020565-SHS_00020569,  SHS_00021403-SHS_00021404, SHS_00021409-SHS_00021410, SHS_00021413-SHS_00021414, SHS_00021455, SHS_00021456, SHS_00021634- SHS_00021659, SHS_00021687-SHS_00021688, SHS_00021692, SHS_00021693-SHS_00021694, SHS_00021695, SHS_00021698-SHS_00021699, SHS_00021093-SHS_00021094, SHS_00026340-SHS_00026343, SHS_00026367--SHS_00026370.

*could have been deleted* by Southwest.  However, she fails to point to any files – or even specify the contents thereof – which are relevant to this litigation that Southwest did not already produce.

Plaintiff's Motion cites various examples of actions which she claims establish that Southwest failed to satisfy its duty to preserve evidence.  However, both the evidence and pertinent case law reveals that Southwest acted reasonably and appropriately in preserving documents, emails, and other items relevant to this lawsuit.  Further, Plaintiff cannot show any actions on the part of Southwest that support her allegations that Southwest deleted relevant documents.  Without any evidence that Southwest deleted relevant documents, Plaintiff, of course, cannot show prejudice.  Prejudice stems from the evidence's relevance, and Plaintiff has failed to make even a threshold showing that Southwest deleted any alleged relevant evidence.

Finally, Plaintiff's Motion improperly uses inaccurate facts as a "smoke and mirrors" tactic to distort the record.  For example, Plaintiff claims that Southwest failed to comply with discovery orders.  That is simply not true, and there is no evidence to support Plaintiff's allegations.  Plaintiff falsely alleges that Southwest did not produce a complete activity log.  This is again, inaccurate.  Plaintiff raised this argument, but the Magistrate Judge found that Southwest did not have any obligation to "create" a new log.  *See* Transcript of December 18, 2019 Hearing, CM/ECF #127-5.  As a way to resolve this issue, the parties agreed that Plaintiff would pay for Southwest's expert to create a copy of the log for the dates requested by Plaintiff.  He did so and supplied this log to Plaintiff.  Plaintiff thereafter complained that the log did not provide the information she wanted.  However, the Magistrate Judge ruled that Plaintiff had received what she requested.  At this point, Southwest agreed to provide the forensic image of Plaintiff's computer to Plaintiff's expert so they could perform the searches they wanted to do.

Southwest's expert provided the forensic image to Plaintiff's expert in August of 2019 (*see* Penrod report, p. 3, CM/ECF #127-04), meaning Plaintiff has possessed a complete forensic image of her Southwest computer for nearly nine months. With this image, Plaintiff's expert has been free to do searches for the specific emails Plaintiff apparently believes should have been on her computer. The fact that her expert does not address this issue at all is telling. *See* Motion to Strike Opinions of David Penrod, CM/ECF #124; Reply in Support of Motion to Strike Opinions of David Penrod, CM/ECF #129.

As additional "support" for her Motion, Plaintiff claims that Southwest should have designated Bill Alexander as a specific witness at the Fed.R.Civ.P. 30(b)(6) deposition. This assertion is contrary to the Federal Rules of Civil Procedure. Again, as the Magistrate Judge noted, Southwest is only required to designate a witness with knowledge on the 30(b)(6) topics—not any specific person. *See* F.R.C.P. 30(b)(6) (persons designated must testify about information known or reasonably available to the organization); *see also* CM/ECF #78, Transcript of September 27, 2019 Hearing, p. 14. Further, Plaintiff never requested to take a deposition of Mr. Alexander, undermining any assertion that his testimony would have been necessary to support her claims. Plaintiff now claims that a supplemental declaration from Charles Krupa, Southwest's director of information technology ("IT"), submitted on October 4, 2019, "defied" this Court's order. Motion at 8. This assertion is completely false and unsupported by the record. *See* CM/ECF #78, Transcript of September 27, 2019 Hearing, p. 14; CM/ECF #74, Magistrate Order. Additionally, this is a new and inaccurate statement. Until now (eight months later), Plaintiff has not filed a motion or otherwise argued that Mr. Krupa's declaration was insufficient. Plaintiff's failure to appropriately raise this issue and address it in a

timely fashion with the Court makes Plaintiff's assertion even more bewildering.  Also noteworthy is that Plaintiff does not cite to any portion of Mr. Krupa's declaration to support her argument as to spoliation of the Angela files.  *See* Declaration of Charles Krupa and Exhibits A and B attached thereto, attached as Exhibit A.

In summary, Plaintiff's Motion for Sanctions is untimely, groundless, and frivolous, as it is neither based on the applicable legal standard for spoliation nor supported by the facts or opinions of either party's expert.  Accordingly, Southwest requests that the Court deny Plaintiff's Motion for Sanctions and award Southwest its fees and costs associated with preparing this Response.

## ARGUMENT

### A.    PLAINTIFF'S MOTION IS UNTIMELY AND SHOULD BE DENIED.

In cases where defendants allegedly destroy evidence they are required to retain, plaintiffs must be "***diligent*** in the defense of their own interests," and should seek sanctions under Federal Rule of Civil Procedure 37 to remedy any prejudice caused by spoliation.  *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136 (10th Cir. 2009).  A Rule 37 motion for sanctions should be filed "***without unreasonable delay***." *Lancaster v. Indep. Sch. Dist. No. 5,* 149 F.3d 1228, 1237 (10th Cir. 1998); cf *Brandt v. Vulcan,* 30 F.3d 752, 756 (7th Cir. 1994) (party bringing motion for sanctions under Rule 37 must do so without unreasonable delay).  Although Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such a motion untimely.  *See, e.g., Butler v. Pettigrew,* 409 F.2d 1205, 1207 (7th Cir. 1969).

It cannot be overstated that Plaintiff first alleged spoliation over two years ago in the initial Complaint.  *See* Complaint ¶¶ 23-24, 58, ECM/CF # 1.  Plaintiff set forth this averment before

conducting any discovery, and without any evidence that spoliation had occurred. Since then, Southwest has complied with Plaintiff's discovery requests and produced ample evidence to refute any allegation of spoliation. For instance, Southwest produced Plaintiff's complete email box in October of 2018 and re-produced several emails at Plaintiff's request in December of 2018. Southwest also provided the forensic image of Plaintiff's computer to Plaintiff's expert on August 13, 2019. Plaintiff then submitted an expert report, analyzing the alleged spoliation (but ultimately concluding that Southwest did not destroy any relevant files), on October 30, 2019. Plaintiff offers no justification for her unreasonable delay between the receipt of Plaintiff's emails, her expert's receipt of the forensic computer image, the submission of her expert's report, and Plaintiff's filing of the present Motion. Indeed, Plaintiff filed this Motion nearly seven months after the close of discovery and six months after Southwest filed its summary judgment motion.

Plaintiff initiated this lawsuit with baseless spoliation allegations. However, Plaintiff did not endorse an expert to support her spoliation allegations in the Complaint. Instead, when Southwest provided an expert report concluding that no spoliation occurred (in response to Plaintiff's unsupported assertions in her Complaint), Plaintiff attempted to strike Southwest's expert report. Even then, Plaintiff did not submit a rebuttal expert report until a month after discovery ended. Plaintiff's rebuttal expert did not express any opinion that Southwest had deleted the Angela emails. Undeterred, Plaintiff has continued to pursue her unsupported, vague, and unsubstantiated allegations. Plaintiff's belated attempt to pursue these allegations now is not only untimely, but baseless. On the timeliness issue alone, this Court should dismiss Plaintiff's Motion.

### B. PLAINTIFF FAILS TO ESTABLISH THE ELEMENTS REQUIRED TO DEMONSTRATE SPOLIATION.

#### 1. Legal Standard.

Under Fed.R.Civ.P. 37, a court may issue sanctions for spoliation if a party fails to take reasonable steps to preserve electronically stored information that "cannot be restored or replaced through additional discovery."   The Advisory Committee Notes to Rule 37 have explained that "the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part[,]" and that "[t]he 'routine operation' of computer systems includes the alteration and overwriting of information, often without the operator's specific direction or awareness."  *See* COMMITTEE NOTES ON RULES—2006 AMENDMENT, Subdivision (f).

A party seeking sanctions for spoliation "has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it."  *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015).  Spoliation is defined as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Blangsted v. Snowmass–Wildcat Fire Prot. Dist.,* 642 F. Supp. 2d 1250, 1259–60 (D. Colo. 2009) (internal quotation marks and citation omitted).  Pending litigation, a party "must not destroy ***unique, relevant*** evidence that might be useful to an adversary."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  Therefore, a party seeking spoliation sanctions must offer some evidence that ***relevant*** documents have been destroyed.  *Id*.; see also *Lutalo v. Nat'l R.R. Passenger Corp.*, No. 11-CV-00974-REB-KLM, 2013 WL 1294125, at *2 (D. Colo. Mar. 28, 2013).  Once Plaintiff establishes that relevant evidence and/or documents were destroyed, Plaintiff must also show that (1) Southwest had a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) Plaintiff was prejudiced by the destruction of the evidence.  *Equal Employment Opportunity*

*Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017).  If a party seeks an adverse inference to remedy the spoliation, it must also prove bad faith.  *Turner*, 563 F.3d at 1149.

**2.      Plaintiff Cannot Establish that Southwest Destroyed Unique and Relevant Evidence.**

In the Motion for Sanctions, Plaintiff fails to satisfy her initial burden in showing that Southwest destroyed unique and relevant evidence.  Plaintiff alleges that Southwest deleted files Plaintiff saved in an electronic folder entitled "Angela" on the desktop of her work-issued computers during the final months of her employment by Southwest.  *See* Complaint ¶¶ 23-24, 58.  However, Plaintiff has also testified that the Angela folder was "a collection of things that otherwise exist."  R. Bragg Deposition, p. 390:11-14.  In other words, the Angela folder consisted of emails and spreadsheets which Plaintiff had also emailed to Angela Kobel, either directly or by using the copy function. R. Bragg Deposition, p. 291:10-12.  Upon receiving the notice of potential litigation, Southwest preserved Plaintiff's email and thereafter produced these relevant documents to Plaintiff during discovery.  Plaintiff has completely failed to identify even a single specific email that is missing.  She has also neglected to identify any specific information contained in any allegedly missing emails.  Southwest has either produced these emails, or they do not exist.

None of the evidence Plaintiff seeks is unique.  Plaintiff "believes" that documents were missing when Southwest produced the Angela folder (*see* R. Bragg Deposition, p. 297:16-19), but this "belief" does not prove spoliation requiring a judicial remedy.  *See Fatpipe Networks India Ltd. v. XRoads Networks, Inc*., 2015 WL 12778633 *7 (D. Utah. Sept. 22, 2015) (even if specific devices were not provided to plaintiff, the error was harmless because plaintiff had in its possession *the exact same version* of firmware and code that was on the devices it claimed it needed).

Therefore, to the extent Plaintiff purports to seek additional information – on top of what has already been disclosed – that information has not been destroyed; rather, it simply does not exist.

Additionally, Plaintiff cannot satisfy her burden in showing that any alleged spoliated evidence was relevant.  The only files Plaintiff has established that may have been deleted or destroyed are "system files," also known as "temporary internet files."  System files are system generated, meaning that are not created by a human.  *See* CM/CEF #127-01, Declaration of Brackin.  Such files are irrelevant to the issues in this litigation.  Again, Plaintiff claims that the files within the Angela folder were emails and spreadsheets.  R. Bragg Deposition, pp. 290:23-294:18; CM/ECF #124-02**,** Plaintiff's Response to Defendant's First Discovery Requests, Request for Production No. 12; CM/ECF #124-01, Bragg Deposition, pp. 223:11-22; CM/ECF #61, 61-01, 61-02.  Emails and spreadsheets are known as "user files" or "user created files," meaning they are computer files created due to the actions of the individual using the computer or the "user."  CM/ECF, # 127-01**,** Declaration of Frank Brackin ¶ 5.  Accordingly, Southwest's expert, Mr. Brackin, focused his analysis on relevant and meaningful user created files.  He did not devote any part of his analysis to system files or temporary internet files, as such files are irrelevant.  *See* CM/ECF, #127-01, ¶¶ 4-5 and supporting exhibits A and B attached thereto.

Throughout this lawsuit, Plaintiff has alleged no facts demonstrating that user created files in the Angela folder were actually destroyed by Southwest.  Indeed, even Plaintiff's expert, Mr. Penrod, does not assert anywhere in his report that Southwest deleted these relevant files.  *See* CM/ECF #127-04, Penrod report, pp. 2-7.  Instead, Plaintiff has focused exclusively on the alleged destruction of system files and temporary internet files.  Now, in the Motion for Sanctions, Plaintiff attempts to show deletion of user created files by making the threadbare argument that Word

documents were contained in the Recycle Bin.  Motion at 5.  However, Plaintiff does not allege that these documents were actually destroyed by Southwest, that the Recycle Bin contained documents relevant to this litigation, or that any documents in the Recycle Bin were not otherwise produced by Southwest in discovery.  Indeed, the fact that Plaintiff cites to documents in the Recycle Bin suggests that Plaintiff found them, or that they were otherwise produced.

Additionally, Plaintiff claims that certain text files were deleted from Plaintiff's computers, and that these text files should be considered user created files.  Motion at 5.  Yet Plaintiff fails to elaborate on what these text files purportedly contain or how they are relevant to this litigation.  In any event, Mr. Brackin addressed both the Word documents in the Recycle Bin and the cited text files in his declaration supporting Defendant's Response to the Motion to Exclude Brackin. CM/ECF #127-01, ¶ ¶ 42-45.  Mr. Brackin confirmed that these types of files were in fact temporary internet files and/or system files.  *Id.*  He reiterated that no user created files were deleted.  *Id.*  Plaintiff's wordsmithing is an attempt to confuse the issues before this Court. However, the issue is plain – neither Plaintiff nor her expert can refute Mr. Brackin's expert conclusion that Southwest did not destroy any user created files which would have been relevant to this litigation.

Finally, Plaintiff also now asserts that temporary internet files are relevant because they can reveal Internet browsing activity.  Motion at 6.  Plaintiff's assertions fail.  Internet browsing is wholly irrelevant to the issue of whether Southwest destroyed certain user created files.  And, again, for purposes of this lawsuit, Mr. Brackin has confirmed that temporary internet files are neither meaningful nor relevant.  CM/ECF #127-02, pp. 4-6.  Plaintiff attempts to rely on *AdvantaCare Health Partners, LP v. Access IV*, 2004 WL 1837997 at *1-2 (N.D. Cal. August 17,

2004) to support the idea that temporary internet files are valuable. Plaintiff argues – albeit unclearly – that temporary files may be relevant for the narrow purpose of determining whether a computer user searched the Internet to find wiping software. This speculative argument borders on the absurd, especially considering that Plaintiff's expert did not conclude that any wiping software was installed on Plaintiff's computer. Southwest's expert asserted unequivocally that no user created files were deleted – not by a user, by wiping software, or otherwise. Accordingly, Plaintiff cannot establish the threshold requirement that unique and relevant documents were destroyed. Therefore, the Court should deny the Motion.

### 3. Plaintiff Cannot Establish Southwest Failed to Preserve Relevant Evidence.

Plaintiff also fails to show that Southwest did not preserve relevant evidence. "The duty to preserve is triggered by commencement of litigation or where a defendant reasonably anticipates litigation involving the evidence." *E.E.O.C. v. Dillon Companies, Inc.*, 839 F. Supp. 2d 1141, 1144 (D. Colo. 2011). Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether "what was done – or not done – was *proportional* to that case and consistent with clearly established applicable standards." *Zbylsk*i, 154 F. Supp. 3d at 1161 (citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)) (emphasis in original). The scope of the duty to preserve evidence is not boundless. *Benton v. Dlorah, Inc.*, 2007 WL 3231431 *4 (D. Kan. 2007). And, the duty only extends to documents which are relevant. *School-Link Technologies, Inc. v. Applied Resources, Inc.*, 2007 WL 677647 *3 (D. Kan. February 28, 2007) (citing *Zublake V*). Plaintiff makes a list of allegations on pp. 2-4 of the Motion purporting to show that Southwest failed to

preserve relevant evidence.  However, the record reveals that these allegations are groundless as Southwest took reasonable steps to preserve evidence relevant to the subject matter of this lawsuit.

Plaintiff's counsel sent John Brooks, local counsel for Southwest, a notice of anticipated litigation dated September 25, 2017.  CM/ECF #56-1; T. Parker Deposition, p. 22: 7-8.  A week later, on October 2, 2017, Travis Parker, Southwest's Chief Human Resources Officer, received a letter from Mr. Books, outlining the notice and explaining Southwest's preservation obligations. *Id*. at p. 22:11-12.  The following day, Southwest implemented a legal hold by sending notice to twenty custodians to preserve and prevent deletion/destruction of information.  IT collected Plaintiff's work-issued computers that same week (*Id*. at 25:1-14), and Southwest preserved Plaintiff's email account on or about October 9, 2017.  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents."  *U.S. ex rel. Baker*, 2012 WL 12294413, at *2 (internal quotations omitted).  However, a corporation is not required to, "upon recognizing the threat of litigation, preserve every shred of paper, every e-mail or electronic document, and every backup tape."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  Notably, although Plaintiff sent a notice of anticipated litigation in September 2017, triggering the litigation hold, she did not actually file her lawsuit until April of 2018, nearly seven months later.  In contrast to Plaintiff's delay, Southwest affirmatively implemented an expansive legal hold and preserved Plaintiff's computer and email account within days of receiving notice of anticipated litigation.  Southwest's response was entirely reasonable.  To the extent Plaintiff alleges that Southwest's prompt actions fail to meet the legal duty to preserve evidence, this theory is not supported by the law. *See New Mexico Oncology and Hematology Consultants,*

*Ltd. v. Presbyterian Healthcare Serv's*, 2017 WL 3535293 *3 (D.N.M. August 16, 2017) (legal holds issued six days after filing of initial complaint and over two weeks after filing of second amended complaint were not a result of bad faith and did not result in spoliation). Southwest fulfilled its obligation to preserve relevant documents.

Additionally, Plaintiff suggests that Southwest employees such as IT personnel or Plaintiff's former supervisor, Angela Kobel, may have accessed Plaintiff's computer after the termination of her employment. Motion at 2-4. Plaintiff infers that in accessing Plaintiff's computer, these Southwest employees also viewed and accessed Plaintiff's files. Plaintiff relies on this inference alone to support the idea that Southwest failed to preserve relevant evidence and that spoliation occurred. However, Plaintiff cannot show that relevant user created files were destroyed merely because certain personnel accessed her computer. Clearly, there was a business need to ensure continuity in Plaintiff's work as HIM director. Plaintiff has not, and cannot, cite to any legal authority which demonstrates that accessing, using, or turning a computer on and off after a legal hold has been issued constitutes spoliation. As noted in other motions, the Magistrate Judge raised this same question to Plaintiff during a hearing on December 18, 2019. Plaintiff's counsel admitted he knew of no authority standing for the proposition that when a retention letter goes out, computers cannot be used or turned on or off thereafter. *See* CM/ECF # 127-05, Transcript of December 18, 2019 Hearing, p. 23. Further, Plaintiff admits that she served a subpoena on Southwest in November of 2017. Motion at 3. Plaintiff's subpoena specifically required Southwest to access Plaintiff's computer - and the Angela folder - in order to comply with the subpoena. It was not only reasonable, but necessary for Southwest, to access relevant

documents on her computer to locate documents in response to the subpoena. This does not constitute spoliation.

Next, Plaintiff claims that because Southwest's staff and custodians had the ability to delete items from their SHS issued computers, they could have deleted relevant emails, and therefore, Southwest failed to meet its duty to preserve evidence. Motion at 2-3. Again, Plaintiff misrepresents both the record and Southwest's legal obligation to preserve relevant documents. Plaintiff does not dispute that her email was preserved in October of 2017. After this preservation, even if other staff and custodians deleted items from their own computers, any emails involving Plaintiff were preserved on her computer. C. Krupa Deposition, p. 90:5-12. Further, courts have noted that even if an employee were to delete a potentially relevant email, "it is extremely likely that such an email would be preserved by another employee due to the overlapping nature of emails. . . [and because] inter-company emails typically involve multiple recipients."[2] *Presbyterian Healthcare Serv's,* 2017 WL 3535293 *3. Even under an imperfect legal hold, any conclusion that a unique and relevant email was completely deleted would be pure speculation. *Id.* (citing *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 742-43 (S.D.N.Y. 2011)) ("the mere fact that a single email was deleted in contravention of the instruction to preserve does not reflect either bad faith, the intentional destruction of evidence, or gross negligence"). As Plaintiff testified in her deposition, "[t]he Angela folder . . . is a collection of things that otherwise exist." R. Bragg Deposition, p. 390:11-14. None of the alleged spoliated documents were unique.

---

[2]For example, any individual email would appear in the outbox or sent mail of (1) the employee who sent the email; (2) the inbox of each employee who received the email; (3) the inbox of each employee who received a copy of the email; and (4) the inbox of each employee who received a blind copy of the email. Moreover, earlier emails are routinely included in later responsive threads. For the litigation hold to fail to result in the retention of an email, it would be necessary for every employee in every address field to violate the litigation hold and delete that email. *Id.*

Indeed, they consisted of emails and spreadsheets which Plaintiff had also emailed to Angela Kobel, either directly or by using the copy function.  To the extent these documents exist, they have been produced to Plaintiff in discovery.

Plaintiff also asserts that Southwest did not verify "whether any custodian deleted relevant data."  Motion at. 3.  Similarly, she alleges that Southwest "did not search its archives to determine if any emails were deleted."  Motion at 4.  However, Southwest has no legal obligation to "search" and "verify" whether custodians deleted relevant data.  *See Presbyterian Healthcare Serv's*, 2017 WL 3535293 at *3 (employees subject to a litigation hold are not forbidden from exercising discretion to determine what documents, email, and other information might be relevant to the lawsuit and thus subject to the hold); *Cache La Poudre Feeds*, 244 F.R.D. at 629 (relying on employees to exercise discretion in determining what specific information to save is sufficient as long as routine procedures which might eliminate relevant information are no longer continued); *see also Concord Boat Corp. v. Brunswick Corp.*, No. LR-C-95-781, 1997 WL 33352759, at *6 (E.D. Ark. Aug. 29, 1997) ("The fact that defendant allowed individual employees to use discretion whether to retain e-mail is simply not indicative of bad faith.").  Southwest was well within its rights to allow its employees to exercise discretion in complying with the legal hold.  And, again, this argument is purely speculative as Plaintiff cites no evidence demonstrating that relevant files were in fact destroyed.

In addition, Plaintiff claims that the 30(b)(6) testimony of Charles Krupa regarding additional custodians being added to the legal hold in September of 2018 supports Plaintiff's allegations that Southwest failed to meet its obligation to preserve evidence.  Rather, Mr. Krupa explained that beginning in September 2018, existing measures to capture and preserve relevant

emails and documents were strengthened to include an additional preservation function in Southwest's Microsoft Exchange server.  C. Krupa Deposition, p. 54:19-22.  Nonetheless, a party's delay in adding individuals to an original litigation hold does not violate that party's discovery obligations.  *See Presbyterian Healthcare Serv's*, 2017 WL 3535293 at *4-5 (holding that delay in adding 174 individuals to the original litigation hold was not a discovery violation and denying Rule 37 sanctions).

Finally, Plaintiff asserts that Southwest had no "IT Governance Protocols" in place at the time the alleged spoliation occurred.  Motion at 4.  Again, Plaintiff willfully misconstrues the evidence.  Mr. Krupa explained at his deposition that since Plaintiff's departure from Southwest, the company has indeed adopted <u>new</u> IT Governance Protocols.  However, he testified that the IT policies in place before the company's adoption of new protocols were actually "stricter" and "more stringent" than he felt necessary.  C. Krupa Deposition, pp. 80:3-5, 85:17-22.  Additionally, once the duty to preserve attaches, defendants are not required to institute any protocols other than the suspension of routine document destruction practices.  *Benton v. Dlorah*, *Inc.,* 2007 WL 3231431 *4 (D. Kan. 2007).  However, this duty does not require a party to implement protocols to preserve each and every e-mail or electronic document generated or existing on a hard drive. *Id*.  Nor does this duty require Southwest to enact a specific type of protocol deemed acceptable by Plaintiff.  *See Fatpipe Networks India Ltd.,* 2015 WL 12778633 *7 (defendant's version of control system used to retain data was not the type of system plaintiff used or preferred for itself, but practice did not result in spoliation requiring sanctions).

Here, Southwest ceased its routine document destruction practices when it implemented the legal hold on or about October 3, 2017 and preserved Plaintiff's email shortly thereafter.  The protocols under the legal hold were sufficient, and Southwest satisfied its preservation obligations.

### 4.    Plaintiff Cannot Establish Any Prejudice.

Even if Plaintiff could establish Southwest violated any duty to preserve – and Southwest assures she cannot – Plaintiff cannot show that she experienced any prejudice.  As explained above, spoliation sanctions are proper when the court determines that a party had a duty to preserve relevant evidence, and the adverse party was *actually* prejudiced by the destruction of the evidence.  *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007). "[A]lleged spoliated evidence <u>*must be relevant*</u> in order to demonstrate the prejudice necessary to justify imposition of a spoliation sanction."  *Lutalo,* 2013 WL 1294125, at *2.  In examining prejudice, a court considers: "(1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party."  *Workman,* 2005 WL 1896246, at *5.

Because Plaintiff herself admits that the contested evidence consists of copies or duplicates of documents produced in discovery, Plaintiff cannot show any prejudice.  *See Fatpipe Networks India Ltd.,* 2015 WL 12778633 *9 (plaintiff could not show that missing evidence had any special significance or unique information and therefore could now show prejudice).  "The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence <u>*rather than a fertile imagination,*</u> that access to the lost material would have produced evidence favorable to his cause . . . [t]he degree of prejudice suffered by a party who experiences spoliation is generally measured in terms of how the unavailability of the spoliated evidence affects proof of the party's

claim or claims." *Montoya v. Newman*, No. 12-CV-02362-REB-KLM, 2015 WL 4095512, at *7 (D. Colo. July 7, 2015).  Plaintiff has failed to show that the emails in the Angela folder would be relevant to her lawsuit or favorable to her cause.  In fact, she cannot even show that any additional documents in the Angela folder – outside of the documents Southwest produced during discovery – actually existed.  Plaintiff alleges that she "believe[s]" there were emails in the folder which were not produced.  R. Bragg Deposition, p. 297:16-19.  However, this qualified assertion is inconsistent with her testimony that every document in the folder was a duplicate of a sent email. During discovery, Southwest produced these relevant emails to Plaintiff along with a complete forensic image of her computer, undermining any degree of culpability.  Plaintiff's belief that Southwest destroyed additional documents in the Angela folder is a product of fertile imagination. This belief cannot stand against Mr. Brackin's expert conclusion (and, Mr. Penrod's failure to refute the conclusion) that no user created files on either of Plaintiff's work computers were deleted or otherwise destroyed.  *See* CM/ECF #127-01, Declaration of Frank Brackin, and attached Exhibits A-C.

Plaintiff also cannot meet her burden of establishing any prejudice because, as underscored throughout this response, she cannot point to any relevant documents that were destroyed.  Indeed, she has not even *attempted* to make a showing of relevance by providing specifics regarding the contents of the allegedly missing documents.  In order to "demonstrate prejudice, plaintiff must offer some proof that evidence relevant to his claim actually existed." *Crumb v. Kohl's Dep't Stores, Inc*., No. 17-CV-02400-PAB-KLM, 2019 WL 250178, at *5 (D. Colo. Jan. 17, 2019) (appeal filed); *Lutalo,* 2013 WL 1294125, at *2.  Plaintiff's conclusory assertions that there should have been more emails than were actually produced are insufficient to demonstrate prejudice.  The

only files Plaintiff can identify as having been deleted are system files and temporary internet files. As noted above and in Southwest's Motion to Strike Penrod, Plaintiff has not shown that any alleged deletion of these types of files would have been favorable to her. The files are not relevant to this litigation, and Plaintiff has been unable to produce any evidence to the contrary.

### 5.   Southwest Did Not Engage in Intentional or Willful Spoliation.

Plaintiff asserts on pages 12-15 of the Motion that Southwest's alleged failure to preserve ESI and its purported destruction or alteration of the same was intentional and willful. This argument is groundless. In cases involving willful misconduct, courts may issue extreme sanctions under F.R.C.P. 37(e)(2), but these sanctions should be used as "a weapon of last resort." *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). In seeking to prove intentional or willful spoliation, the aggrieved party must prove bad faith. *Turner,* 563 F.3d at 1149. "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir. 1997). Plaintiff has not alleged any facts purporting to show Southwest's bad faith. As noted above, Southwest took steps to implement a legal hold and preserve Plaintiff's email account days after receiving Plaintiff's notice of anticipated litigation. Based on these preservation efforts, the company produced to Plaintiff all relevant emails saved on her computer. These emails included copies of documents Plaintiff saved to the Angela folder – as well as original emails from her Outlook file – the same documents Plaintiff alleges were spoliated. Southwest's production of these documents undermines any inference of bad faith.

Plaintiff's attempt to draw similarities between the facts of this case and those of *Organik Kimya, San. Ve Tic. A.S. v. Intl. Trade Comm.,* 848 F.3d 994 (Fed. Cir. 2017) are futile. In *Organik,*

plaintiff destroyed hundreds of thousands of files, despite explicit orders from the ALJ to preserve them, and then tried to deceive the ALJ as to its actions.  *Id*.  Here, the only files that may have been deleted are irrelevant system and/or temporary internet files.  Moreover, the evidence is clear that because such files are system-generated, to the extent any system and/or temporary internet files were deleted, the deletion was unintentional.  As stressed throughout this Response, Plaintiff fails to show Southwest destroyed any specific document or other piece of evidence which is relevant to this lawsuit.  After two years of baseless spoliation speculation and allegations, enough is enough, and Plaintiff's allegations must be put to rest.

## CONCLUSION

The frivolous nature of this motion has caused Southwest undue delay, vexation, and expense.  Based upon the foregoing, Southwest respectfully requests that this Court deny Plaintiff's Motion for Spoliation Sanctions and award Southwest its reasonable costs and attorneys' fees associated with responding to this Motion.

Dated: May 13, 2020

 */s/ Janet Savage*
Janet Savage
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email: janet.savage@dgslaw.com

*Attorney for Defendant SOUTHWEST
HEALTH SYSTEM, INC. d/b/a SOUTHWEST
MEMORIAL PRIMARY CARE*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF systems which will send notification of such filing to the following e-

mail addresses:

Lynne Marie Sholler
Anthony Douglas Edwards
lynne@sholleredwards.com
anthony@sholleredwards.com

*Attorneys for Plaintiff*

*/s/ Suzie Anderson*
Suzie Anderson