IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00763-MSK-NRN

ROBYN BRAGG,

Plaintiff,

v.

SOUTHWEST HEALTH SYSTEM, INC. d/b/a Southwest Memorial Primary Care,

Defendant.

---

## ORDER DENYING
## PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS (Dkt. #133)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court on Plaintiff Robin Bragg's Motion for Spoliation

Sanctions (Dkt. #133), which was referred to the undersigned by Judge Marcia S.

Krieger on April 22, 2020. (Dkt. #134.) Defendant Southwest Health System, Inc.

("SHS") filed a response (Dkt. #135), and Plaintiff filed a reply. (Dkt. #138.)

On June 26, 2020, the Court held an evidentiary hearing on the subject motion.

(*See* Dkt. #158.) The Court heard testimony from Karen Pasquin, Patricia Thomas,

David Penrod, Francis Brackin, Charles Dennis, Charles Krupa, and Travis Parker.[1] The

---

[1] In the interests of time, the Court ordered that except for expert witnesses on the issue
of spoliation, all other direct live witness testimony would be presented via declaration,
with the witness made available live for cross-examination, redirect examination, and
questions by the Court. The Court also ordered the parties to designate and counter-
designate portions of any deposition testimony they wished to present to the Court.
(Dkt. #144.)

Court admitted Plaintiff's Exhibits 1–6, 17, 19– 21, 23–25, 28, 31 (except for paragraphs

17 and 18), 35, and 36; and Defendant's Exhibits A–I, and M–R.

Now, being fully informed and for the reasons discussed below, it is hereby

**ORDERED** that the motion is **DENIED**.

## Background

Plaintiff alleges that SHS terminated her employment[2] as the hospital's Health

Information Manager in retaliation for Plaintiff raising concerns about SHS's billing

practices, which she believes constituted Medicaid and Medicare fraud. (*See generally*

Dkt. #1.) As relevant here, Plaintiff believed that IV start/stop times had to be entered by

the administering nurse, and that it was fraud if times were entered by anyone. (*Id.* at 5–

7; ¶¶ 14–19.) Plaintiff claims that she "documented the results of her investigation [into

the alleged fraud] in a computer folder called 'Angela[.]'" (*Id.* at 14, ¶ 58.) This folder

contained e-mails sent to SHS CFO Angela Kobel. (*See id.* at 7, ¶ 23) ("In attempts to

stop the violations of unlawful CMS billing, [Plaintiff] provided some screen shots e-

mails [reflecting improper IV insertions] to CFO Kobel and preserved them on her

Hospital-designated computer in a folder named 'Angela'")). The issue now before the

Court revolves around that file folder.

Plaintiff contends that after SHS received a litigation hold letter from Plaintiff's

counsel on September 25, 2017, it altered or destroyed electronically stored information

("ESI") on Plaintiff's computer, including the "Angela" folder. Plaintiff argues that her

expert, David Penrod, has proved within a reasonable degree of certainty that SHS did

---

[2] Technically, Plaintiff resigned. However, it is undisputed that she was permitted to resign in lieu of being fired.

so. She states that "SHS's defense should be dismissed due to its intentional and willful conduct which defied Court Orders" or, at a minimum, that the Court presume the deleted and altered data or files favored Plaintiff. She also requests attorneys' fees and costs.

In response, SHS asserts that Plaintiff's motion is untimely and fails to establish that SHS destroyed or otherwise failed to preserve any relevant evidence. SHS requests its reasonable attorneys' fees and costs associated with responding to Plaintiff's motion.

### Legal Standard

"Spoliation" is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 620 (D. Colo. 2007). As Judge Krieger has stated,

> Spoliation occurs when: (I) a party has a duty to preserve evidence, usually because the party knows or should know that the evidence is relevant to imminent or existing litigation; (ii) that party destroys the evidence intentionally or in bad faith; and (iii) the destruction of the evidence works to the opponent's prejudice.

*Partminer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-cv-00586-MSK-MJW, 2011 WL 587971, at *6 (D. Colo. Feb. 9, 2011) (unpublished) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1250–51 (10th Cir. 2010)).

A moving party has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015). If the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). "Mere

negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.1997).

"District courts have 'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence." *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1225–26 (10th Cir. 2017) (citations omitted). Among the options, a court may strike witnesses, *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006); issue an adverse inference, *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008); exclude evidence, *see Jordan F. Miller Corp. v. Mid–Continent Aircraft Serv., Inc.*, 139 F.3d 912 (10th Cir. 1998) (unpublished); or, in extreme circumstances, dismiss a party's claims, *id.* When deciding the appropriate sanction for a party's spoliation of evidence, "courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Jordan F. Miller*, 139 F.3d 912 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). "[A] court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing." *Id.*

Finally, the Federal Rules of Civil Procedure provide specific guidelines relating to the failure to preserve ESI:

> **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

## The Hearing Testimony

The Court will summarize the relevant testimony presented by deposition designations,[3] declarations, and at the June 26, 2020 evidentiary hearing.

### Karen Pasquin

Ms. Pasquin was Chief Nursing Officer at SHS and worked with Plaintiff. Independently of Plaintiff, in the summer of 2017, Ms. Pasquin began complaining to SHS CEO Kent Rogers that she was concerned that SHS was engaged in Medicaid and Medicare fraud. After SHS ended Plaintiff's employment, Ms. Pasquin states that Mr. Rogers instructed her to destroy documents relating to Plaintiff's termination. Ms. Pasquin refused to do so, in part, it seems, because she did not have any such documents. Ms. Pasquin did not have access to Plaintiff's computer and did not delete anything from it. Ms. Pasquin's employment was terminated in 2018, and she filed a lawsuit against SHS for wrongful termination (which has since settled).

---

[3] The Court does not make specific rulings regarding the Parties' various objections to the deposition designations. Instead, because this was a preliminary evidentiary hearing before only the Court, all objections have been considered in assigning appropriate weight to the evidence presented.

**Patricia "Patty" Thomas**

Ms. Thomas worked as a medical coder at SHS. Immediately prior to her termination, Plaintiff was Ms. Thomas's supervisor. Like Plaintiff, Ms. Thomas was concerned about how SHS was billing IV insertions, and frequently e-mailed department heads about the issue. She did not report the matter to state or federal authorities.

Ms. Thomas preserved e-mails in Microsoft Outlook folders organized under the name of the sender or recipient, including e-mails sent to and received from Plaintiff. Although Ms. Thomas noticed that after Plaintiff left, her e-mail folder for the head of registration was missing, along with a "couple" other contacts and e-mails, Ms. Thomas did not testify that e-mails regarding IV billing or those related to Plaintiff were missing or otherwise altered. Ms. Thomas was told by SHS management to not destroy or delete any documents relating to Plaintiff, and she did not do so. Ms. Thomas did not have access to Plaintiff's computer and did not delete documents or e-mails from her computer.

Ms. Thomas and other coders were laid off in May 2018 because SHS outsourced that function.

**David Penrod**

Mr. Penrod is Plaintiff's expert in forensic examination. The crux of his expert opinion (which SHS has challenged in a motion currently pending before Judge Krieger)[4] is that unallocated space on the hard drive of Plaintiff's desktop computer was overwritten after her employment was terminated. "Unallocated space" is where inactive

---

[4] Plaintiff's motion to strike Defendant's expert's report and testimony is likewise pending before Judge Krieger.

files (for example, deleted files) are stored. A deleted file in unallocated space can be retrieved if it is not overwritten.

Mr. Penrod opined that simply starting up and/or shutting down a computer writes over unallocated space. Other actions will also affect unallocated space. For instance, Mr. Penrod notes that the Chrome web browser was installed on Plaintiff's desktop in November 2017. This was a large file (approximately 18.3 megabytes) and by installing it, unallocated space was overwritten as a matter of course. Similarly, a very large (3.1 gigabyte) hibernate system file ("hiberfil.sys"), which saves all operating systems when a computer is put into hibernation/sleep mode, was modified on November 17, 2017, which resulted in allocated space being overwritten. The same day, another large system file ("pagefile.sys") was modified that used over four gigabytes of data, which necessarily overwrote files in unallocated space.

Mr. Penrod was also concerned about the users who accessed Plaintiff's computer after she left SHS. Mr. Penrod states that on November 17 and 18, 2017, Plaintiff's computer was turned on and two different user accounts, *balexander* and *cdennis*, as well as the Plaintiff's user account, *rbragg*, were logged into, and the "Angela" desktop folder was accessed. USB storage drives were also attached to the desktop on November 17, 2017 by someone using the *rbragg* account. Mr. Penrod observed that documents can be cut and pasted from a desktop folder onto a USB drive without being "deleted." Ultimately, Mr. Penrod's position is that from the moment she was terminated, Plaintiff's computer should have been removed from use and its hard drive removed and imaged.

Mr. Penrod conceded that no wiping software was found on Plaintiff's desktop computer. He also agreed that his analysis did not show that any user-created files (such as Microsoft Word, Excel, or Outlook files) were deleted. Mr. Penrod was admitted that he was not aware that on November 14, 2017, Plaintiff's counsel served on SHS a subpoena duces tecum, issued in Plaintiff's unemployment proceeding, which demanded documents, including certain e-mails from Plaintiff's account and the contents of the "Angela" folder.

**Angela Kobel**

Plaintiff designated brief portions of Ms. Kobel's deposition testimony. Ms. Kobel admitted that after SHS received the litigation hold letter she went on Plaintiff's computer, with SHS IT staff present, to look for certain reporting information. She stated that she saw the "Angela" folder but did not open it or delete any information. Ms. Kobel testified that she kept printed copies of the screen shots Plaintiff created in a filing cabinet. She estimated that she received less than ten e-mails from Plaintiff and the coders about improper documentation.

**Robyn Bragg**

To the Court's surprise, Plaintiff did not testify at the evidentiary hearing, even though there was no argument that she was unavailable to do so (Plaintiff called in and listened to the proceedings). Instead, Plaintiff relies on designations excerpted from her two depositions. The Court decided to allow this, although Plaintiff was informed that her decision not to testify would affect the weight given to her deposition testimony.

After an outside consultant determined that SHS was losing a significant amount of money by not charging for IVs, in March 2017, Plaintiff was chosen to implement

coding for inpatient IV insertions. Plaintiff believed it was "illegal" for anyone but the administering nurse to enter the IV start/stop times. When there were no stop times entered, or when the stop time was not entered by the administering nurse, Plaintiff would document it. Plaintiff stated that Ms. Kobel instructed her to do so. Plaintiff copied Ms. Kobel, Ms. Pasquin, and other SHS employees on e-mails regarding inaccurate IV coding. Plaintiff testified to the contents of at least three such e-mails. In one, for example, she asked, "Can you please have the nurse responsible place the IV start and stop times." Plaintiff would then move these files to the "Angela" folder. Plaintiff estimated she sent between 45–85 relevant e-mails between June and August 2017.

Plaintiff believed that there were more "Angela" folder e-mails than were produced by SHS in discovery, but she could not say for sure which e-mails were in the folder and which were not. Plaintiff confirmed that the "Angela" folder was a place where she collected already-existing documents in one place. Plaintiff also verified that a number of the e-mails she remembers as having been in the "Angela" folder were produced by the SHS in discovery. Plaintiff could not identify or describe any specific missing e-mails. Plaintiff also confirmed that SHS had produced in discovery between 45-85 e-mails authored by the Plaintiff (which was consistent with the number of e-mails she believed were in the "Angela" folder).

**Francis Brackin**

Mr. Brackin is SHS's expert in forensic analysis and examination. He reviewed Plaintiff's laptop and desktop computers for any deleted files. Mr. Brackin found two "Angela" folders on the desktop, as well as "Angela" folders in Plaintiff's e-mail account. He searched for evidence that user-created files were altered or deleted during the

relevant period, and while he found that the "Angela" folder was accessed on two days on November 17 and 18, 2017, there was no other evidence that it had been otherwise accessed or that any files were deleted. He found no wiping software on the computers. He also found no evidence that any files were deleted in connection with the two USB drives that connected to the desktop computer on November 17 and 18, 2017. In his expert opinion, there was no evidence that user-created files, including e-mails, documents, spreadsheets, or pictures, were deleted from Plaintiff's laptop or desktop computers. This is consistent with Plaintiff's expert's testimony: no user-created files were deleted from Plaintiff's computer.

**Charles Dennis**

Charles Dennis was SHS's interim IT director from October 10, 2016 through August 17, 2018. After Plaintiff's employment at SHS ended, Mr. Dennis believes a "write block" function was placed on Plaintiff's computer which prevented users from altering or deleting information or accessing her e-mails. This was the general practice, and he has no reason to believe that it did not happen in this instance, but he cannot positively state if or when it did. SHS did not have an auto delete function on any of its devices. On October 3, 2017, Mr. Dennis received the notice of a litigation hold, after which IT put Plaintiff's e-mail on a hold, which meant it could not be accessed, deleted, or modified. Between October 5 and October 14, 2017, SHS employees could access Plaintiff's computer, but could nothing could be deleted.

After SHS received the subpoena duces tecum described above, Mr. Dennis and another IT employee, Bill Alexander, searched Plaintiff's desktop for responsive documents. As administrators, they were able to log in using Plaintiff's user login

credentials. Mr. Dennis found the two "Angela" folders on the desktop, and they contained only two files each. Mr. Dennis used either one or two USB devices to transfer information responsive to the subpoena from Plaintiff's desktop to his own computer. Neither he nor anyone else at SHS accessed the computer again until September 2018. Mr. Dennis testified that he did not destroy or delete any relevant information and has no knowledge of any such destruction or deletion.

**Charles Krupa**

Mr. Krupa is the current Director of Information Services at SHS. He was not employed at SHS in 2017, but he knew from Mr. Alexander that a hold was placed on Plaintiff's e-mail exchange server on October 5, 2017. No documents could be physically deleted thereafter. Mr. Krupa testified that, applying search terms, a search was performed of Plaintiff's e-mail account that produced numerous e-mails from Plaintiff to Angela Kobel and others. Moreover, Mr. Krupa testified that Plaintiff had an Outlook folder labeled "Angela K" that contained e-mails regarding Ms. Kobel. Mr. Krupa was not aware of any relevant information that had been deleted from Plaintiff's desktop.

**Travis Parker**

Mr. Parker is and was during the relevant period the Chief Human Resources Officer at SHS. Mr. Parker received notice of the litigation hold in this matter on October 2, 2017, and the next day he sent an e-mail out to 20 SHS custodians, along with Mr. Dennis and Mr. Rogers, explaining they had a duty to preserve and not delete or destroy any relevant information. Mr. Rogers never told him to delete or destroy evidence. In November 2017, Mr. Parker told Mr. Dennis to retrieve from Plaintiff's

11

computer the documents referenced in the subpoena duces tecum discussed above,

which he and Mr. Alexander did on November 17 and 18, 2017. Afterwards, they sent

Mr. Parker those documents in zip drive. Those documents were produced to Plaintiff.

**Discussion**

As the moving party, Plaintiff bears the burden of proving by a preponderance of

the evidence that SHS failed to preserve or destroyed potentially relevant evidence from

her computer. *See Ernest v. Lockheed Martin Corp*, No. 07–cv–02038–WYD–KLM,

2008 WL 2945608, *1 (D. Colo. July 28, 2008). Absent any evidence that such

documents existed and were destroyed, the Court need not engage in a substantive

spoliation analysis. *See Zbylski,* 154 F. Supp. 3d at 1160 ("Courts have found, and this

court agrees, that a party seeking spoliation sanction must offer some evidence that

relevant documents have been destroyed."). Upon review of the evidence before it, the

Court concludes that Plaintiff has not established that it is more likely than not that

relevant evidence has been destroyed or lost. Because she has failed to meet her

burden, her motion must be denied.

First, the Court finds that there are no facts supporting Plaintiff's contention that

SHS acted improperly in preserving documents. The evidence indicates that SHS's

usual practice was that after an individual's employment ended, a "write block" function

would be placed on his or her computer which prevented users from altering or deleting

information. The Court has no reason to believe that this did not happen after Plaintiff

left SHS on August 17, 2017. In any case, a litigation hold letter was sent by Plaintiff's

counsel to SHS on September 25, 2017. SHS's legal counsel notified Mr. Parker of the

hold on October 2, 2017. The litigation hold was implemented the next day. On either

October 5 or October 9, 2017, an exchange server litigation hold was placed on Plaintiff's computer that would not permit any user to delete e-mails. After accessing the desktop computer in order to respond to Plaintiff's own subpoena, the evidence supports SHS's position that the device was then secured and not reissued or used by any other SHS employee. The next activity in September 2018 was related to this litigation. On this evidence, the Court concludes that SHS fully complied with its legal obligations to preserve relevant electronic evidence.

Next, there is zero evidence that SHS destroyed any relevant evidence or that any such evidence was lost or deleted. Plaintiff alleges that documents in the "Angela" folder appear to be missing and therefore must have been destroyed. But Mr. Brackin testified that no user-created files were deleted from Plaintiff's computers during the applicable timeframe. That testimony was confirmed by Plaintiff's expert. Instead, Plaintiff's expert Mr. Penrod focused on whether system files were created and unallocated space overwritten. The Court does not find this evidence, even accepted as true, particularly germane to the question before it. The "Angela" folder referenced by Plaintiff indisputably contained user-created files, not system files. If there is no evidence that user-created files were deleted, there can be no spoliation as it relates to the "Angela" folder or related, user-created documents. And Plaintiff's speculation that files were copied and pasted from her computer onto a USB drive is just that, pure speculation.

If the Court were to accept Plaintiff and Mr. Penrod's position, spoliation would necessarily occur in almost every lawsuit involving ESI. As Mr. Penrod acknowledges, mundane acts like turning a computer on and off or putting it in sleep mode will

automatically create system files which will then overwrite unallocated space. Here, that would mean that by attempting to respond to Plaintiff's subpoena, SHS engaged in spoliation of evidence. Such a result would be absurd. There may be a case where overwriting unallocated space may result in the loss or destruction of potentially relevant information. This is not such a case.

Significantly, Plaintiff cannot even say with any specificity what information she believes is being kept from her. Again, she did not testify at the hearing. It is beyond belief that a party whose lawyers assert she should be granted judgment without any trial as a sanction for intentional destruction of evidence would not be willing to appear by telephone or video-conference and swear under oath, subject to cross examination, as to what evidence she believes was destroyed. Plaintiff presumably knows what was in the "Angela" folder. She should have testified live about what was supposedly missing and subjected herself to cross examination. Nothing in her designated deposition testimony provided any support for the claims of spoliation. To the contrary, in her deposition, Plaintiff estimated that she sent between 45 and 85 e-mails to Ms. Kobel regarding IV coding and billing practices. The number of such e-mails collected by SHS and produced in discovery falls within this range. Plaintiff was also presented with several of these e-mails during her deposition and was unclear whether they would have been found in the "Angela" folder. And if they were not located in the "Angela" folder, given the nature of e-mail, they were still recoverable and discoverable through the accounts of the sender/recipient or anyone else who was copied on the them. Most tellingly, an "Angela" folder containing e-mails was found on Plaintiff's e-mail account. The Court suspects that simple confusion between the computer's "desktop" and the

computer's e-mail folders is part of the claimed discrepancy. But Plaintiff's confusion over saving something on a folder located on a computer's "desktop" and saving something in an e-mail folder does not a spoliation case make.

In any event, the undisputed evidence shows that no user-created files were deleted or destroyed by SHS. Neither the Plaintiff herself nor Plaintiff's forensic expert could point to any evidence that any relevant files in this case were destroyed or not preserved. I further find by a preponderance of the evidence that SHS acted appropriately and in conformance with its legal obligations in issuing a litigation hold and taking appropriate steps to ensure that relevant information, including ESI, was properly preserved.

In sum, I do not find that any ESI that should have been preserved was lost. I do not find that SHS failed to take reasonable steps to preserve ESI. To the contrary, SHS took reasonable steps to preserve relevant ESI. I do not find that Plaintiff has been prejudiced in any way from the loss of ESI. And I do not find that SHS acted with the intent to deprive Plaintiff of the use of any ESI in the litigation. *See* Fed. R. Civ. Pro. 37(e).

Finally, SHS seeks its fees and costs for having to defend the spoliation motion but does does not cite the authority under which fees are sought. Under Rule 11, the Court may award sanctions when a pleading or motion is for an improper purpose, contains claims or contentions not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," or contains factual contentions that lack evidentiary support. Fed. R. Civ. P. 11(b)–(c). However, a motion for sanctions under Rule 11 "must be made separately from any other motion and must

15

describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c).

Moreover, the opposing party must be given a reasonable opportunity to respond. Fed.

R. Civ. P. 11(b).

Without deciding one way or the other, the Court will consider a suitably

supported sanctions motion. SHS shall have until July 27, 2020 to file such a motion.

Any response shall be filed on or before August 7, 2020. No reply will be accepted

without leave of Court.

For the reasons set forth herein, Plaintiff's Motion for Spoliation Sanctions (Dkt.

#133) is **DENIED**.

**Dated:** July 13, 2020

N. Reid Neureiter
United States Magistrate Judge